# Illinois Official Reports

## Appellate Court

---

### *People v. Thigpen*, 2017 IL App (1st) 153151

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYTHIA THIGPEN, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-3151 |
| Filed | October 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-18665; the Hon. Charles P. Burns, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Manuel Hernandez, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Joseph Alexander, and Tilesha Northern, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Neville and Justice Mason concurred in the judgment and opinion. |

¶ 1     After a bench trial, Tythia Thigpen was convicted of aggravated battery of a peace officer and sentenced to 11 years' imprisonment. On appeal, Thigpen contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to show that he knew the victim was a police officer when he struck him with a baseball bat. Thigpen also contends that the State failed to prove that the officer's injury constituted great bodily harm.

¶ 2     We affirm. The evidence overwhelmingly supports the trial court's finding that Thigpen was aware that Sergio Glowacki was a police officer engaged in his duties when he struck Glowacki with the bat. Moreover, Glowacki's testimony established that his injuries reached the threshold of great bodily harm.

¶ 3                                    Background

¶ 4     Thigpen was tried on charges of attempted first degree murder, aggravated battery of a peace officer, aggravated battery, and resisting or obstructing a peace officer. At trial, Chicago police officer Sergio Glowacki testified that at about 12:39 a.m. on August 24, 2013, he responded to a call regarding people fighting in the 5700 block of South Winchester Avenue. He drove a marked police Tahoe that had blue Mars lights, sirens, and blue and red lettering that stated "Chicago Police." He had on his police uniform, which included his black outer protective vest with an embroidered star, and his patrol belt, which holds his handcuffs and weapon.

¶ 5     When Glowacki arrived, between 20 and 30 people were fighting, yelling, and shoving each other. Glowacki activated the emergency equipment, including his lights, sirens, and air horn. As people walked past his vehicle, he ordered them to leave the area. Glowacki then saw Thigpen strike a woman across the back with an aluminum baseball bat. Thigpen began randomly striking other people in the crowd with the bat.

¶ 6     Glowacki approached Thigpen. There was less than an arm's-length distance between them. Glowacki announced his office. He ordered Thigpen to put the bat down, but Thigpen did not comply and began walking away. Glowacki grabbed Thigpen to place him under arrest. As Glowacki attempted to place Thigpen in handcuffs, Thigpen struggled and resisted, and they both fell to the ground. Thigpen slipped out of Glowacki's grasp and stood up. Glowacki was on his hands and knees. Glowacki looked up and saw Thigpen holding the bat. Thigpen then struck Glowacki across the head with the bat using "a full baseball bat" swing.

¶ 7     Glowacki fell facedown, flat on the ground. He felt something hit him in the head again, and he felt several hits across the back of his vest. He tried to crawl away and radioed the code for "officer in distress." Glowacki then lost consciousness. He recalled someone asking him if he could describe the offender, and he did so. Blood gushed from his skull, and an officer put pressure on the spot. He could not recall being treated by paramedics. He next remembered being at John H. Stroger, Jr., Hospital. In court, Glowacki identified a photograph of the parkway where the attack occurred and noted the "pool of blood" where he had been laying.

¶ 8     At the hospital, Glowacki phased in and out of consciousness. He was connected to several breathing apparatuses, and numerous tubes were going across his body. He had slight bleeding in his brain and was slightly elevated to keep the pressure off his head. He had a

fractured skull and received 27 staples to close the lacerations on his head. A three-inch horizontal scar with no hair remains on the back of his head. He also suffered bruised ribs. Glowacki was hospitalized for three days.

¶ 9        After his release, Glowacki was unable to drive or ride in a car due to motion sickness. After he improved, he underwent four months of extensive physical therapy for his neck. He returned to work six months after the attack but still experiences occasional severe headaches.

¶ 10        Glowacki identified Thigpen in a lineup three days after the attack. Video from his vehicle's dashboard camera did not record the attack because it occurred off to the side. The video indicates that only 32 seconds elapsed from the time Glowacki got out of his vehicle to the time other officers arrived and the assault ended.

¶ 11        Melchizedek Tidwell was sitting on a front porch on Winchester Avenue when the crowd began fighting in the middle of the street. Tidwell walked to the other side of the street to get a better view. He saw a girl with a baseball bat in her hand. He then saw Thigpen, whom he knew from the block, take the bat from the girl.

¶ 12        A marked police squad car with its sirens active arrived. Officer Glowacki, who was in uniform, was alone. Glowacki tried to break up the fight by telling people to leave the area and go home. Glowacki then approached Thigpen. They stood face-to-face. Glowacki grabbed Thigpen and tried to take the baseball bat out of his hand. Glowacki went behind Thigpen and again tried to take the bat. Thigpen and Glowacki struggled, and both went to the ground. Thigpen slipped away from Glowacki, who was on his knees. Thigpen, standing over Glowacki, swung the bat, striking Glowacki in the head. Thigpen said "F this" and swung the bat a second time, again striking Glowacki, causing Glowacki to fall flat to the ground.

¶ 13        Tidwell refused to speak with police until the following morning. He told police what he saw and gave them Thigpen's name. He also identified Thigpen in a photo array.

¶ 14        Laqueisha Stephens was with her friends on Winchester Avenue when a girl named Cyeshi began fighting with her over a boy. The fight escalated into a large group fight. Thigpen, Cyeshi's brother, approached Stephens and told her to get off of his sister. Thigpen began swinging a metal baseball bat at Stephens and her girlfriends. One police officer arrived in a marked police vehicle with the lights activated. That officer, Glowacki, was wearing his blue and white police uniform. Glowacki rushed up to Thigpen from behind and tried to grab the bat. Thigpen turned around and was face-to-face with Glowacki. Thigpen again began swinging the bat. Glowacki fell to the ground, and Thigpen began hitting the officer in the head with the bat. Thigpen struck Glowacki in the back of the head and around his temple. Stephens saw Thigpen strike Glowacki with the bat "multiple times." No one else was near the officer as Thigpen hit him. Glowacki was on the ground bleeding, and other officers arrived. Stephens later identified Thigpen in a lineup and photo array.

¶ 15        The defense presented a stipulation that, in a video statement to a detective and assistant State's Attorney, Stephens stated that when the officer went to the ground "people were kicking him and the bat was still swinging at him."

¶ 16        The trial court found that Glowacki was a uniformed police officer engaged in performing his official duties at the time of the assault. The court also found that the State "unequivocally" proved beyond a reasonable doubt that Thigpen inflicted great bodily harm

on Glowacki due partly to the severe blows to the head by the baseball bat, treatment for bleeding in the brain, the development of headaches, and the need for four months of physical therapy.

¶ 17    The trial court determined Thigpen was not guilty of attempted first degree murder and the aggravated battery counts based on causing permanent disability. The trial court, however, found Thigpen guilty of the remaining counts of aggravated battery and resisting a peace officer. The court merged all of the counts into one count of aggravated battery for causing great bodily harm to a peace officer and sentenced Thigpen to 11 years' imprisonment.

¶ 18                                             Analysis

¶ 19    Thigpen contends that the State failed to prove beyond a reasonable doubt that he knew Officer Glowacki was a police officer when he struck him with the bat. Thigpen also contends that the State failed to prove that Glowacki's injury constituted great bodily harm.

¶ 20                                   Sufficiency of the Evidence

¶ 21    When defendant claims that the evidence is insufficient to sustain his conviction, this court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense established beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). This standard applies whether the evidence is direct or circumstantial, and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 22    In a bench trial, the trial court determines the credibility of the witnesses, weighs the evidence, resolves conflicts in the evidence, and draws reasonable inferences. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will not reverse a criminal conviction based on insufficient evidence unless the evidence is so improbable or unsatisfactory that reasonable doubt exists as to defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 23    Thigpen first contends that the State failed to prove that he knew Officer Glowacki was a police officer when he struck him with the bat. Thigpen argues that there was a large crowd engaged in a chaotic fight and he believed that a member of the crowd was attacking him from behind. He argues that the evidence shows that Glowacki rushed him from behind and tried to take the bat and, when Thigpen turned around and swung the bat at that person, he did not know that he was hitting a police officer.

¶ 24    To prove Thigpen guilty of aggravated battery of a peace officer, the State had to show that Thigpen knowingly caused great bodily harm to Glowacki by striking him about the body with the bat and that he knew Glowacki was a police officer performing his official duties. 720 ILCS 5/12-3.05(a)(3)(i), (ii) (West 2012). A person acts knowingly when he or she "is consciously aware" of the nature of his or her conduct or the results of his or her conduct. 720 ILCS 5/4-5(a) (West 2012).

¶ 25    We conclude that the evidence was sufficient for the trial court to find Thigpen knew Glowacki was a police officer engaged in his duties when he struck him. Glowacki, Tidwell,

and Stephens all testified that Glowacki arrived in a marked police vehicle with the sirens and emergency lights activated. All three witnesses also testified that Glowacki was in full police uniform. Glowacki and Tidwell testified that Glowacki stood face-to-face with Thigpen when he first approached him. Glowacki testified that he announced his office to Thigpen and ordered him to put the bat down. When Thigpen did not comply, Glowacki grabbed Thigpen and attempted to handcuff him. Thigpen resisted, and during a struggle, they both fell to the ground. Glowacki and Tidwell testified that Thigpen slipped out of Glowacki's grasp, stood up, and then struck Glowacki across the back of the head with the bat.

¶ 26      This evidence establishes that, before striking Glowacki with the bat, Thigpen viewed Glowacki standing in front of him in his full police uniform and that Thigpen was aware that Glowacki was attempting to place him under arrest when he resisted and began struggling with Glowacki. The evidence overwhelmingly supports the trial court's finding that Thigpen was aware that Glowacki was a police officer engaged in his duties when Thigpen struck him.

¶ 27                                   Great Bodily Harm

¶ 28      Thigpen next contends that the State failed to prove that Glowacki's injury constituted great bodily harm. Thigpen argues that great bodily harm requires more than a laceration or bruises and the evidence showed that Glowacki had a laceration to the back of his head. Thigpen also asserts that Glowacki was released from the hospital within 48 hours and that there was no proof that his subsequent conditions, including headaches and physical therapy, were related to the blow to his head.

¶ 29      Whether an injury constitutes great bodily harm to support a conviction for aggravated battery presents a question of fact to be determined by the trier of fact. *People v. Crespo*, 203 Ill. 2d 335, 344 (2001). "Bodily harm" has been defined as physical pain or damage to the body, including lacerations, bruises, or abrasions, whether temporary or permanent. *People v. Mandarino*, 2013 IL App (1st) 111772, ¶ 63. While "great bodily harm" does not lend itself to a precise legal definition, it requires proof of an injury greater and more serious in nature than a simple battery. *Id.* The question is not what the victim did or did not do to treat his or her injuries but what injuries he or she received. *Id.*

¶ 30      Viewed in the light most favorable to the State, we find that the evidence established Glowacki suffered great bodily harm. Glowacki testified that, after being struck in the head, blood was squirting from his skull and he lost consciousness. At the hospital, he was connected to several breathing apparatuses, and numerous tubes were going across his body. He had slight bleeding in his brain and also suffered bruised ribs. He had a fractured skull and received 27 staples to close the lacerations on his head. A three-inch horizontal scar with no hair remains on the back of his head. Glowacki stayed in the hospital for three days. Afterwards, Glowacki was confined to his home, unable to drive or ride in a car due to motion sickness. Later, he underwent months of extensive physical therapy and testified that he still suffers from residual headaches.

¶ 31      Glowacki's testimony established that the injury he sustained was more than a mere laceration, and thus, was greater and more serious in harm than a simple battery. The trial court had the responsibility of determining whether Glowacki's injury constituted great bodily harm, and we discern no reason to disturb the trial court's determination that the

injury rose to great bodily harm.

¶ 32        Affirmed.