2024 IL App (1st) 220826-U

No. 1-22-0826

Order filed January 22, 2024

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 17725 |
| | ) | |
| VAUGHNELL FRENCH, | ) | Honorable |
| | ) | Angela M. Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's seven-year sentence for aggravated criminal sexual abuse of a 12-year-old victim as it was not manifestly disproportionate to the nature of the offense.

¶ 2    Following a jury trial, defendant Vaughnell French (also known as Vaugnell French) was found guilty of predatory criminal sexual assault of a child and aggravated criminal sexual abuse. The trial court sentenced defendant to 60 years in prison for predatory criminal sexual assault, and a consecutive sentence of 7 years in prison for aggravated criminal sexual abuse, for a total of 67

years in prison. On appeal, defendant's only contention is that his sentence for aggravated criminal sexual abuse is manifestly disproportionate to the nature of the offense and should be reduced. We affirm.

¶ 3    Defendant was charged by indictment with three counts. The State nol prossed one count and went to trial on one count each of predatory criminal sexual assault of a child premised on defendant knowingly committing an act of sexual penetration on Y.M. when Y.M. was under 13 years of age (720 ILCS 5/11-1.40(a)(1) (West 2014)) and aggravated criminal sexual abuse premised on defendant touching Y.M.'s breast for his sexual gratification when Y.M. was under the age of 13 (720 ILCS 5/11-1.60(c)(1)(i) (West 2014)).

¶ 4    Y.M. testified that when she was 11 years old, she lived with her mother Brittany M., her brother Xavier M, her mother's ex-girlfriend, and defendant, who she identified in court.[1] Defendant would sometimes ask her to sit on his lap or, when no one was around, would rub her back and tell her she was beautiful "or stuff like that."

¶ 5    When Y.M. was 12 years old, she moved and no longer lived with defendant but spent weekends at defendant's home with Xavier. On Saturday before Y.M.'s 13th birthday, Y.M. was alone with defendant in his apartment. Defendant and Y.M. were "play fighting" when he "grazed" her breast with his hand. She "backed away" from him and "it felt awkward." Defendant then suggested they watch television in his bedroom. Y.M. had been in his bedroom before.

¶ 6    Y.M. went into the bedroom with defendant and they sat at the foot of the bed next to each other. Defendant started to caress Y.M.'s arm and told her that he did not love her like an uncle,

---

[1] As Y.M.'s mother and brother share the same last name, we refer to them by their first names. Similarly, we will refer to Y.M.'s grandmother Lyndell M. by her first name *infra*.

and wanted to marry her when she turned 18. Defendant started to remove her clothes, first her shirt then her pants and underwear. He told her to go the head of the bed and lay down, which she did, and then defendant scooted next to her. He removed his penis from his pants, got on top of her, and placed his penis in her vagina. Y.M. gripped the sheets and defendant moved his body with his penis inside of her. It felt painful, like burning. Y.M. did not recall for how long the moving happened.

¶ 7     When it stopped, Y.M. got out of the bed, picked her clothes up off the floor, left the bedroom, and went to the bathroom. While she sat on the toilet, she saw she was bleeding and there was "white stuff" coming out of her. She laid on the floor and cried for 20 minutes. When she exited the bathroom, defendant told her that she could not tell anyone what happened "if [she] cared about him," because "he would get in trouble." When Y.M.'s mother came to pick her up on Sunday, defendant gave Y.M. a journal as a birthday gift. Her 13th birthday was the following weekend.

¶ 8     Y.M. testified that defendant put his penis in her vagina many times over the course of months, including the next weekend when her mother dropped her and Xavier off at defendant's apartment. Y.M. stayed there almost every weekend. Defendant also placed his mouth on her vagina and breast, and his hands inside her vagina. He also made her place her mouth on his penis. Those acts happened multiple times over the weekends. Y.M. testified that she stayed with defendant for about a week in October of 2014, and he continued to have sex with her during that time.

¶ 9     In October of 2014, after Y.M. started 8th grade, Y.M. learned she was five and a half months pregnant. She lied to her mother about the baby's father because she "felt dirty" and did

not want anyone to know the truth. Y.M.'s daughter, Z.M., was born on December 30, 2014. About a year and a half later, when Y.M. was 15 years old, the police were informed defendant was the father of Y.M.'s child.

¶ 10    On cross-examination, Y.M. confirmed that, prior to the incident that occurred near her birthday, defendant had done things which made Y.M. feel uncomfortable, such as asking her to sit on his lap and rubbing her back. She did not tell anyone about it at the time, but it happened repeatedly. On redirect examination, Y.M. confirmed that she cared about defendant, who had been like an uncle, and did not want to get him in trouble.

¶ 11    Further State's evidence established that DNA data analysis showed there was a 99.999% chance that defendant was Z.M.'s father and, in 1995, defendant was convicted of first degree sexual assault of a child in an incident involving his cousin.

¶ 12    Defendant testified that he "made no advances at all" toward Y.M. and "never touched [her] inappropriately at any time." He denied touching her breast the weekend before her 13th birthday, undressing her, and sexually assaulting her.

¶ 13    On April 18, 2014, Y.M. and Xavier had been dropped off at his home for a planned visit. Defendant left around 8:30 p.m. to attend a party. When he arrived back home after 1 a.m., he was "[v]ery intoxicated." Y.M. was lying on the bed in his bedroom. He asked her to leave but she did not want to get out and asked if she could " 'just sleep in here,' " putting her arm around his shoulder. Defendant took her arm from around him, put his hand on the small of her back, and pushed her away. Defendant laid on his back and "pretty much pass[ed] out." He did not pay attention to Y.M. or recall seeing what she was doing at that point. When he woke up the next morning and proceeded to relieve himself, he discovered that his pants were unbuttoned and

unzipped, and a "chalky residue" was on his underwear. Defendant denied sexually assaulting his cousin, stating he had taken a plea bargain in that case.

¶ 14    The jury found defendant guilty of predatory criminal sexual assault and aggravated criminal sexual abuse.

¶ 15    Defendant filed a motion for new trial, which the court denied.

¶ 16    Defendant's presentence investigation report (PSI) reflected a conviction for first degree sexual assault of a child (1995), three convictions for aggravated battery (1992, 1993, 1988), and three convictions for public indecency (1988, 1987).

¶ 17    At the sentencing hearing, Y.M. read a victim impact statement to the court, where she explained the trauma that she continued to experience from the incident and that she had tried to take her own life. Defendant spoke in allocution and apologized to all parties involved, including his family, Y.M.'s family, and the court.

¶ 18    The court sentenced defendant to 60 years in prison for predatory criminal sexual assault and a consecutive sentence of 7 years in prison for aggravated criminal sexual abuse, for a total of 67 years in prison.

¶ 19    Before imposing the sentence, the court recited the trial evidence in detail, including that defendant was 44 years old at the time of the assaults while Y.M. was only 12 years old. The court stated that "the evidence showed that [d]efendant sexually assaulted [Y.M.], not once, but over and over again" and "[d]efendant used his position of trust, authority and supervision over [Y.M.]." It remarked on how vivid Y.M.'s testimony was of the first sexual assault. The court felt that defendant's "version of events was nothing short of perjury" and the jury's verdict indicated they rejected his testimony of events and believing Y.M.'s version.

¶ 20    The court discussed the information in the PSI and factors in mitigation and aggravation. It found that, if the past was any indication, the mitigation factor regarding whether defendant's crimes were the result of circumstances not likely to recur did not apply. Similarly, it found the mitigation factor regarding whether defendant's attitudes and character indicate he was unlikely to commit another crime did not apply as "the past says differently." The court noted that defendant had prior attacks on other women, which "show an intense animosity toward his victims and a desire to dominate them." The court found that defendant's conduct "did cause or threaten great harm" and its sentence was "necessary to deter others from committing the same crime." The court stated that "[i]f ever there is a case that cries out for the maximum penalty for the crime of predatory criminal sexual assault of a child, this Court feels this is such a case."

¶ 21    Defendant filed a motion to reconsider sentence, which the trial court denied.

¶ 22    On appeal, defendant argues that his seven-year sentence for aggravated criminal sexual abuse was excessive and should be reduced because the sentence is manifestly disproportionate to the nature of the offense, which consisted of grazing the clothed breast of 12-year-old Y.M. Defendant does not challenge the 60-year sentence imposed on the predatory criminal sexual assault offense, which he notes was deemed "appropriately reprehensible by the sentencing court."

¶ 23    The Illinois Constitution provides that a trial court shall impose a sentence balancing "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court has broad discretion when imposing a sentence. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The trial court is afforded "substantial deference" in sentencing because it personally observed the defendant and the proceedings, and is "in a much

better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36.

¶ 24    Where a defendant challenges a sentence within the statutory limits for the offense, we presume the sentence is not excessive. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 27. Absent an abuse of discretion, "the sentence may not be altered on review." *People v. Stacey*, 193 Ill. 2d 203, 209-210 (2000). In the sentencing context, an abuse of discretion occurs when a sentence "varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. A reviewing court will not substitute its judgment for that of the trial court merely because it would have weighed the sentencing factors differently. *Alexander*, 239 Ill. 2d at 213. Illinois Supreme Court Rule 615(b)(4) (eff. Jan 1, 1967) gives a reviewing court the power to reduce a sentence, but this should only be exercised cautiously and sparingly. *Alexander*, 239 Ill. 2d at 212.

¶ 25    As charged, aggravated criminal sexual abuse of a child, where the defendant was 17 years of age or older and committed an act of sexual conduct with a victim who was under 13 years old, is a Class 2 felony that carries a sentencing range of three to seven years in prison. 720 ILCS 5/11-1.60(c)(1)(i), (g) (West 2014); 730 ILCS 5/5-4.5-35(a) (West 2014). Because defendant was also convicted of predatory criminal sexual assault of a child under section 11-1.40(a)(i) of the Code, the two sentences must be served consecutively. 730 ILCS 5/5-8-4(d)(2) (West 2014).

¶ 26    Defendant's seven-year sentence for aggravated criminal sexual abuse of a child falls within the statutory sentencing range and, barring affirmative evidence to the contrary, we resume it is proper. *People v. Burton*, 2015 IL App (1st) 131600, ¶36.

¶ 27    Nevertheless, defendant argues his seven-year sentence was excessive given the nature of the underlying conduct, which he states was "only a graze" and not something more severe, such as a grab or conduct accompanied by lewd comments or gestures.

¶ 28    Reviewing the record as a whole, we find that the trial court did not abuse its discretion in sentencing defendant to seven years in prison for aggravated criminal sexual abuse. Among other offenses detailed in the PSI, defendant's criminal history includes a prior prison sentence for first degree sexual assault of a child. Yet despite this, he again committed sexual abuse of a child, demonstrating he was not deterred from by the previous, more lenient sentence. See *People v. Evangelista*, 393 Ill.App.3d 395, 399 (2009) ("criminal history alone" may "warrant sentences substantially above the minimum"). The trial court explicitly stated that defendant's conduct "did cause or threaten great harm" and the sentence was "necessary to deter others from committing the same crime." In fashioning its sentence, the trial court was entitled to consider the nature of the offense, the protection of the public, deterrence, and punishment, along with defendant's rehabilitative prospects. *People v. Corral*, 2019 IL App (1st) 171501, ¶ 120.

¶ 29    Further, the circumstances of the aggravated criminal sexual abuse offense did not occur in a vacuum. When put in context, defendant's "graze" of Y.M.'s breast while "play fighting" with her was not an isolated act but constituted the first step towards defendant's other improper sexual conduct that occurred in his bedroom and continued in the following months, such conduct that ultimately resulted in her pregnancy. See *People v. Fern*, 189 Ill. 2d 48, 53 (1999) (the trial court must base its sentence on the particular circumstances of the case, and consider factors such as defendant's credibility, demeanor, general moral character, social environment, habits, and age). Under the facts of this case, defendant's sentence was not manifestly disproportionate to the nature

of the offense and we decline his request to reduce it or to remand the cause for a new sentencing hearing.

¶ 30    Defendant relies on *People v. Stacey*, 193 Ill. 2d 203 (2000), where the defendant in separate offenses momentarily grabbed the fully clothed breasts of two young girls while making lewd comments and gestures, and was sentenced to two-consecutive 25-year prison terms. *Id.* at 206-208. On appeal, the Illinois Supreme Court found that the seriousness of the offense and defendant's conduct, while "reprehensible," did not warrant such a high sentence, and reduced defendant's sentence to consecutive terms of six years in prison for each offense. *Id.* at 211. Defendant compared his conduct to that in *Stacey*, and argued that a maximum seven-year sentence is unwarranted.

¶ 31    We decline defendant's invitation to engage in a comparative sentencing analysis. See *Fern*, 189 Ill. 2d at 62 (holding a claim that a sentence is excessive must be based on the particular facts and circumstances of that case and rejecting a comparative-sentence approach). Moreover, defendant's argument diminishes the seriousness of the offense, which is the most important sentencing factor. *Jones*, 2019 IL App (1st) 170478 at ¶ 55. As stated, defendant had a prior conviction for sexual assault of a child. He knew Y.M. considered him her "uncle," yet he still chose to "graze" her clothed breast as a preliminary to his subsequent sexual assault of her and made Y.M. uncomfortable. The trial court noted that the jury's verdict showed that it believed Y.M.'s version of events, and the court commented that defendant's version of events "was nothing short of perjury," an assessment entitled to deference. See *Stacey*, 193 Ill. 2d at 209 (the trial court has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral

character, mentality, social environment, habits, and age). Based on the facts of this case, we cannot find that the sentence was disproportionate to the nature of the offense.

¶ 32    Defendant also argues that the trial court did not consider the aggravated criminal sexual abuse conduct as a separate offense from the predatory criminal sexual assault offense. However, other than the fact that the court was not explicit in its reasoning for the maximum sentence on this count, defendant cites no affirmative evidence supporting this claim. . Moreover, the trial court is not required to articulate for the record every factor it considered to justify its sentence. *People v. Ramos*, 353 Ill. App. 3d 133, 137-38 (2004). In the context of the circumstances of the offense and defendant's criminal history, the maximum sentence for aggravated criminal sexual abuse is both appropriate and proportional to the severity of the offense. Accordingly, the trial court did not abuse its discretion in sentencing defendant and we affirm defendant's sentence for aggravated criminal sexual abuse.

¶ 33    For the aforementioned reasons, the sentence of the circuit court is affirmed.

¶ 34    Affirmed.