# Illinois Official Reports

## Appellate Court

---

### *People v. Thomas*, 2019 IL App (1st) 162791

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES THOMAS, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>No. 1-16-2791 |
| Filed<br>Rehearing denied | November 15, 2019<br>December 19, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CR-3439; the Hon. Joan Margaret O'Brien, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, Bradley Jarka, and Kieran M. Wiberg, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Matthew Connors, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Mikva and Justice Cunningham concurred in the judgment and opinion.


## OPINION

¶ 1        Following a bench trial, defendant James Thomas was convicted of aggravated unlawful use of a weapon (AUUW) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C) (West 2014)) and sentenced to one year in prison. On appeal, defendant argues that (1) the trial court erred in denying his pretrial motion to quash his arrest and suppress evidence of a firearm police found in his vehicle and (2) the State failed to prove that he constructively possessed the firearm beyond a reasonable doubt. For the following reasons, we reverse.

¶ 2                                     JURISDICTION

¶ 3        Defendant was sentenced on September 22, 2016. He filed his notice of appeal on September 22, 2016. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Oct. 1, 2010) and Rule 606 (eff. Mar. 20, 2009), governing appeals from a final judgment of conviction in a criminal case entered below.

¶ 4                                      BACKGROUND

¶ 5        Defendant was charged by information with three counts of AUUW (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C) (West 2014)) based upon his alleged possession of an uncased, loaded handgun in his vehicle without having been issued a valid Firearm Owner's Identification (FOID) card or concealed carry license (CCL).

¶ 6        Prior to trial, defendant filed a motion to quash his arrest and suppress evidence of the firearm, arguing that the police entered his vehicle and seized the weapon without probable cause. At the suppression hearing, defendant testified that he picked up his brother, Steve Harris, on 64th Street at approximately 6:30 p.m. on February 17, 2015. Defendant then drove to their home in the 12000 block of Sangamon Street. He denied committing any traffic offenses on the way home.

¶ 7        Upon arrival, defendant parked his vehicle on the street, exited with Harris, and locked the doors. Defendant then walked around the rear of his vehicle and was near the trunk when two police officers arrived in a squad car and "boxed [him] in" by parking directly behind his vehicle. The officers exited with their weapons drawn, shined their spotlight on defendant and Harris, and ordered them to walk toward the squad car. Defendant and Harris complied. One of the officers then took defendant's keys from his pocket and approached his vehicle. The other officer handcuffed defendant and Harris together, put them in the back of the squad car, and "ran [their] names." Afterwards, the police recovered a loaded firearm from under the passenger's seat of defendant's vehicle. On cross-examination, defendant denied telling the officers that the firearm belonged to him. However, he acknowledged that Harris was released shortly after the police recovered the weapon.

¶ 8        The defense rested, and the State called Chicago police officer James Bansley. Bansley testified that he and his partner, Officer Matthew O'Brien, were driving near 122nd Street when he observed defendant's vehicle turn onto Sangamon without signaling. They "pursued" the vehicle in order to conduct a traffic stop, but defendant pulled over before the officers caught up to his vehicle. Defendant and Harris then exited their vehicle and began walking toward one of the houses on Sangamon. The officers parked behind defendant's vehicle, illuminated defendant and Harris with their spotlight, and exited the squad car. O'Brien approached defendant and asked for his driver's license while Bansley stood near the passenger's side of defendant's vehicle. As defendant and Harris were walking back toward the squad car, Bansley looked through the window of defendant's vehicle and observed approximately five inches of an object that, through his experience as a police officer, he "immediately" recognized as the extended magazine of a handgun.

¶ 9        While defendant's back was turned, Bansley gestured to O'Brien to alert him about the firearm. Upon receiving the signal, O'Brien handcuffed defendant and Harris together while they were between defendant's vehicle and the officers' squad car. Bansley then opened the door to defendant's vehicle, which was unlocked, and recovered the firearm. Bansley next observed O'Brien remove the handcuffs from Harris and place them solely on defendant. Afterwards, O'Brien informed Bansley, in defendant's presence, that defendant "ma[d]e an admission *** regarding the gun." Defendant was ticketed for failure to use his turn signal and subsequently charged with AUUW. On cross-examination, Bansley testified that he recovered the firearm without asking whether defendant or Harris possessed a FOID card.

¶ 10       O'Brien testified that he wrote an arrest report following the encounter. He included that Bansley told him he observed the magazine of a handgun in defendant's vehicle.

¶ 11       In closing, defense counsel argued that the officers did not have probable cause to arrest defendant because they were not aware that he lacked a valid FOID card at the time they seized the firearm. Counsel also argued that the officers were not entitled to seize the weapon for safety reasons because defendant and Harris were already outside of their vehicle. In response, the State argued that the officers initiated a proper traffic stop and were justified in securing the firearm for their own safety because defendant was "right there at the rear of the car."

¶ 12       The trial court ruled that the officers were justified in seizing the firearm for their safety, stating that the fact that the weapon was in plain view "takes the issue about whether or not the officers were in danger out of it." Consequently, the court denied defendant's motion.

¶ 13       At trial, the parties stipulated to the suppression hearing testimony from Bansley, O'Brien, and defendant. The State also entered into evidence certified records showing that defendant owned the vehicle in question but had not been issued a FOID card or CCL. The parties waived closing arguments, and the court found defendant guilty on all three counts of AUUW. Defendant moved for a new trial, which the court denied. Following a hearing, the court merged the counts into a single count of AUUW based on the lack of a FOID card or CCL, and it sentenced defendant to one year in prison.

¶ 14                                    ANALYSIS

¶ 15       On appeal, defendant first argues that the trial court erred in denying his motion to quash his arrest and suppress evidence. More specifically, defendant contends that the police (1) did not have probable cause to arrest him based on the mere presence of a firearm in his vehicle and (2) were not entitled to seize the firearm for safety reasons because he and Harris were

- 3 -

secured outside of the vehicle at the time. Accordingly, defendant maintains that the trial court should have suppressed the firearm as unlawfully obtained evidence and that this court should reverse his conviction outright because the State could not have proven him guilty beyond a reasonable doubt without evidence of the firearm.

¶ 16     When reviewing a trial court's ruling on a motion to quash arrest and suppress evidence, we apply a bifurcated standard of review. *People v. Holmes*, 2017 IL 120407, ¶ 9. We give great deference to the trial court's findings of fact and will reverse them only if they are against the manifest weight of the evidence. *Id.* However, we review the ultimate legal question of whether the evidence should be suppressed *de novo*. *Id.* In doing so, we may affirm the trial court's ruling on any basis in the record. *People v. Hopkins*, 235 Ill. 2d 453, 467-68 (2009).

¶ 17     There is no dispute that, having observed defendant commit a traffic violation, the police were justified in initially stopping him as he attempted to walk away from his vehicle. See *People v. Hackett*, 2012 IL 111781, ¶ 20 (brief stop is lawful where police have reasonable suspicion that a traffic violation has occurred).

¶ 18     Both the Illinois Constitution (Ill. Const. 1970, art. I, § 6) and the fourth amendment to the United States Constitution (U.S. Const., amend. IV) protect individuals against unreasonable searches and seizures. *Holmes*, 2017 IL 120407, ¶ 25. The " 'essential purpose' " of the fourth amendment is to safeguard against arbitrary invasions by requiring that law enforcement officers exercise their discretion reasonably. *People v. McDonough*, 239 Ill. 2d 260, 266 (2010) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979)). Thus, the fourth amendment is not designed to proscribe all searches and seizures, but only those that are "unreasonable." *People v. Hall*, 352 Ill. App. 3d 537, 545 (2004).

¶ 19     In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court held that a brief, investigatory stop of a suspect does not violate the fourth amendment so long as the totality of the circumstances known to police are sufficient to create an objectively reasonable suspicion that a crime has occurred. The *Terry* Court further held that, because it "would appear to be clearly unreasonable to deny the officer the power to take necessary measures *** to neutralize the threat of physical harm" during such a stop, an officer may also search the stopped person for weapons if there is reason to suspect that he might be armed and dangerous. *Id.* at 23-24.

¶ 20     In *Michigan v. Long*, 463 U.S. 1032 (1983), the Supreme Court extended the principles of *Terry* to allow for a protective search of a suspect's vehicle during an investigatory stop. There, two officers observed the defendant's vehicle swerve off a rural road and into a ditch. *Id.* at 1050. As the officers approached, the defendant was standing outside of his vehicle, and a large hunting knife was on the floorboard in plain view. *Id.* Consequently, one of the officers detained the defendant, who appeared to be intoxicated, near the rear of the vehicle while the other officer searched the passenger compartment for additional weapons. *Id.* at 1050-51. The Supreme Court ruled that the search was justified for officer safety, noting that, although the defendant was in police control outside of the vehicle at the time, he would have had access to any weapons inside had he broken away from the police or been allowed to reenter his vehicle after the stop. *Id.* at 1051-52.

¶ 21     However, if the information gathered by officers during an investigative stop does not give rise to probable cause that a crime has been committed, any item found during the stop—even a weapon—must be returned. 725 ILCS 5/108-1.01 (West 2014); *People v. Raibley*, 338 Ill. App. 3d 692, 700 (2003) (noting that an item discovered during a lawful search may only be seized if police "have probable cause to believe it is contraband or evidence of a crime," and

"[t]he incriminating character of the item must be immediately apparent at the time of the seizure"). We find no probable cause here. Defendant walked away from his car as the police approached because he had reached his home. He did not run away, and when the police asked to talk to him he obliged. The gun was not on his person but was under the passenger seat of the car where someone else was sitting. Officer Bansley admitted that he never asked defendant whether he had a FOID card. These facts, on their own, would not lead "a reasonably cautious person to believe that [defendant had] committed a crime." (Internal quotation marks omitted.) *Hopkins*, 235 Ill. 2d at 472.

¶ 22    The State relies on *People v. Colyar*, 2013 IL 111835, where our supreme court held that a protective search of the defendant's vehicle was justified under *Terry* and *Long* and the firearm found under the front passenger seat was admissible at trial. *Colyar*, however, was decided before the supreme court, in *People v. Aguilar*, 2013 IL 112116, struck a section of the AAUW statute that categorically prohibited the possession of an operable firearm outside the home. Once the police in *Colyar* confirmed that the defendant had an operable gun in his car, that evidence in itself was sufficient to establish probable cause to believe a crime of illegal gun possession had been committed.

¶ 23    Here, defendant was arrested after the supreme court decided *Aguilar*. Therefore, the police needed probable cause to believe, not only that defendant possessed a gun, but that his possession was illegal. Post-*Aguilar*, the mere possession of a gun in a car could be a legal concealed carry, which would be illegal only if defendant did not have a FOID card. Officer Bansley, however, admitted that he never asked defendant whether he had a FOID card. The record does not support a finding that probable cause existed when the police arrested defendant and seized the gun. The trial court erred in not granting defendant's motion to suppress the gun.

¶ 24    Furthermore, we find that remandment for retrial is not appropriate because the evidence presented was insufficient to support a finding of guilt. When faced with a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. In doing so, we must draw all reasonable inferences in favor of the prosecution. *Id.* It is the trier of fact's role to determine the credibility of the witnesses, resolve conflicts in the testimony, and draw conclusions based on the evidence. *People v. Williams*, 193 Ill. 2d 306, 338 (2000). A reviewing court will not reweigh the evidence or substitute its own judgment on these issues for that of the trier of fact. *People v. Gray*, 2017 IL 120958, ¶ 35.

¶ 25    The State was required to prove that defendant possessed an uncased, loaded, and immediately accessible firearm in his vehicle without having been issued a currently valid FOID card or CCL. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5); (a)(1), (a)(3)(C) (West 2014). Defendant does not dispute that he lacked a FOID card or CCL but instead argues solely that the State did not establish that he possessed the firearm in question. More specifically, he contends that the evidence did not show he knew the firearm was in his vehicle.

¶ 26    Possession may be actual or constructive. *People v. Givens*, 237 Ill. 2d 311, 335 (2010). To establish constructive possession of a firearm, the State must prove that the defendant (1) had knowledge that the firearm was present and (2) exercised immediate and exclusive control over the area in which the weapon was found. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 25. In determining whether the State carried its burden, the trier of fact is entitled to

rely on reasonable inferences from the evidence. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Constructive possession is often proved through entirely circumstantial evidence. *People v. Wright*, 2013 IL App (1st) 111803, ¶ 25.

¶ 27    A defendant's knowledge of a firearm in a vehicle may be inferred from factors such as the visibility of the weapon from the defendant's perspective, the amount of time in which the defendant had the opportunity to view the weapon, and the size of the weapon. *People v. Ingram*, 389 Ill. App. 3d 897, 900 (2009). A defendant's knowledge may also be demonstrated by his statements or conduct upon encountering the police. *Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 28    It is undisputed that Bansley observed approximately five inches of a firearm's extended magazine protruding from beneath the front passenger's seat of a vehicle owned by defendant. Defendant, however, was the driver and not the passenger. He denied that the firearm was visible from his perspective in the driver's seat. The fact that Officer Bansley approached the car, illuminated it with a spotlight, and looked through the window to observe what he recognized as the extended magazine of a handgun is not evidence upon which a rational trier of fact could find, beyond a reasonable doubt, that defendant also must have seen and recognized the gun under the passenger's seat while he was driving. Also, defendant's conduct did not indicate that he knew a gun was under the passenger's seat. He did not flee when the officers approached him, and he willingly returned to the car to answer their questions.

¶ 29    Although the State argues that defendant admitted to owning the gun, we found no such testimony in the record. Rather, during his cross-examination, defendant denied telling the officers that the firearm belonged to him. Bansley did testify that O'Brien informed him that defendant made "an admission" regarding the firearm. However, it is unclear what defendant "admitted" about the gun. In any event, this statement was hearsay and not admissible as substantive evidence of defendant's guilt. *People v. Johnson*, 199 Ill. App. 3d 577, 582 (1990) (noting that "a police officer may testify that he had a conversation with an individual and that he subsequently acted on the information received" but he "cannot testify as to the substance of his conversation with the individual because that would be inadmissible hearsay").

¶ 30    For these reasons, we find the evidence insufficient to support a finding of guilt beyond a reasonable doubt and reverse the trial court's judgment convicting defendant.

¶ 31    Reversed.