NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231263-U

NO. 4-23-1263

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 26, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| DAVID A. MAYS, | ) | No. 22CF252 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding (1) the State presented sufficient evidence to sustain defendant's convictions, (2) defendant's convictions did not violate the one-act, one-crime doctrine, and (3) defendant's sentence for armed violence was not excessive.

¶ 2    Following a bench trial, defendant, David A. Mays, was found guilty of armed violence, unlawful possession of a weapon by a felon, unlawful possession of a defaced firearm, and possession of methamphetamine. The trial court sentenced defendant to consecutively imposed prison terms of 45 years for armed violence and 5 years for possession of methamphetamine. Defendant appeals, arguing his convictions for armed violence and possession of methamphetamine should be reversed because the State failed to prove him guilty beyond a reasonable doubt or, alternatively, (1) his conviction for possession of methamphetamine should be vacated under the one-act, one-crime doctrine and (2) his sentence for armed violence should

be vacated as excessive. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Indictment

¶ 5          In January 2023, a grand jury returned a bill of indictment charging defendant with armed violence (720 ILCS 5/33A-2(a) (West 2022)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), unlawful possession of a defaced firearm (*id.* § 24-5(b)), and possession of methamphetamine (720 ILCS 646/60(a), (b)(1) (West 2022)). As for the possession of methamphetamine charge, the indictment alleged defendant knowingly possessed less than five grams of a substance containing methamphetamine. As for the armed violence charge, the indictment alleged defendant committed the offense of possession of methamphetamine while "armed with a dangerous weapon, a .22 caliber 2-shot pistol."

¶ 6                                    B. Bench Trial

¶ 7          In June 2023, the trial court conducted a bench trial. The State presented testimony from (1) Michael Mattern, a deputy with the Woodford County Sheriff's Office; (2) Samuel Bachman, a detective with the Woodford County Sheriff's Office; and (3) Jennifer MacRitchie, a forensic scientist with the Illinois State Police and a qualified expert in forensic drug chemistry. The State also presented photographs, certified criminal records, two plastic bags containing a crystalline substance, and a handgun. Defendant did not present any evidence. The following is gleaned from the evidence presented.

¶ 8          Around 8 p.m. on December 10, 2022, Deputy Mattern was on patrol near Minonk when he observed a single-cab pickup truck entering the parking lot of a Road Ranger gas station. Deputy Mattern, who was in his parked patrol vehicle at a business across from the gas station, noticed the truck had no front registration plate and no light on the rear registration plate.

¶ 9        Deputy Mattern testified the truck pulled into a parking spot at the gas station. He observed its occupants, a male who was driving and a female who was seated in the passenger seat, were "moving around in the vehicle and quickly looking back at my position numerous times." After approximately 15 to 20 minutes, the male driver exited the truck, went into the gas station, and then returned to the truck with a bag. Deputy Mattern did not recall if the female passenger also went into the store. After the driver returned to the truck, he moved the truck, with the passenger inside, to another parking spot at the gas station. The driver then exited the truck and appeared to move "some things around in the vehicle." The driver then entered the truck and sat inside it for a short period before driving away from the gas station. Deputy Mattern followed the truck in his patrol vehicle.

¶ 10       When the truck entered the interstate, Deputy Mattern activated the emergency lights on his patrol vehicle to initiate a traffic stop. Deputy Mattern explained the emergency lights included a red and blue light bar, red and blue lights in the front bumper, and flashing lights in the headlights. Approximately 50 seconds and one mile after the emergency lights were activated, the truck stopped.

¶ 11       Deputy Mattern exited his patrol vehicle and approached the truck on foot after it stopped. Deputy Mattern identified defendant as the male driver and Alexandra Bowser as the female passenger. Defendant was a convicted felon. After advising defendant and Bowser of the reason for the stop, Deputy Mattern requested proof of a driver's license and insurance, which defendant provided. Deputy Mattern learned the truck belonged to defendant. Deputy Mattern obtained defendant's consent to search the truck.

¶ 12       During the search of the truck, Deputy Mattern observed a Styrofoam cup that appeared to have been purchased from the Road Ranger gas station. The cup was in a two-cup

cupholder attached to the dashboard above the center console. The cup was in the right side of the cupholder, and an ashtray was in the left side of the cupholder. Deputy Mattern testified the cup could be reached from where both defendant and Bowser were seated. Deputy Mattern lifted the lid of the cup and discovered it was mostly filed with a dark soda and ice and had two small plastic bags of suspected methamphetamine floating at the top. Deputy Mattern removed the cup from the cupholder and noticed it felt "abnormally heavy." He then removed the two plastic bags from the cup and slowly poured the soda and ice onto the ground. Deputy Mattern observed a small, two-shot .22-caliber pistol at the bottom of the soda cup. He removed the handgun and discovered it was loaded and had a scratched-off serial number.

¶ 13      The photographs presented by the State showed (1) the Styrofoam cup with a plastic lid and straw, (2) the cupholder where the cup was located, (3) the cup with the lid partially removed and its contents of a dark soda, ice, and two small bags floating at the top, (4) the cup with the lid, straw, soda, ice, and bags removed and a small handgun inside and pointed upwards, and (5) the handgun opened with bullets inside and a scratched-off serial number.

¶ 14      After finding the handgun and the suspected bags of methamphetamine inside the truck, Deputy Mattern arrested defendant and Bowser because both had access to the contraband and neither of them took ownership of the items.

¶ 15      The handgun was later test-fired and found to be capable of firing. Detective Bachman testified he did not test the handgun for fingerprints due to the report of it being bound in a liquid. Detective Bachman "believed there was a very small likelihood that there would even be a trace of a fingerprint" on the handgun.

¶ 16      The crystalline substance from one of the bags discovered within the Styrofoam cup was tested and determined to be 1.317 grams of a substance containing methamphetamine.

The other bag discovered within the cup and the crystalline substance contained therein were weighted and determined to be 2.621 grams. The crystalline substance in the other bag was not tested due to the similarity in appearance with the tested substance from the first bag.

¶ 17        Based upon the evidence presented, the trial court found defendant guilty of the charged offenses. The court, in the oral pronouncement of its decision, thoroughly reviewed the evidence on the record and explained its reasoning for its findings. In part, the court inferred the methamphetamine and handgun were "dumped" into the cup sometime after Deputy Mattern activated his emergency lights, noting, "[W]hy else would you throw your meth and gun in a fluid, soda?" The court also inferred defendant was, at a minimum, aware of the contraband in the cup. The court ultimately found defendant constructively possessed the methamphetamine and had immediate access to and timely control over the handgun.

¶ 18                                    C. Sentencing

¶ 19        In July 2023, the trial court, after denying a motion for a new trial, conducted a sentencing hearing. The court received a presentence investigation report (PSI) for its consideration. The State presented testimony from Samuel Bachman and Angela Trowbridge. The defense presented letters in support of defendant and a written statement from defendant. The following is gleaned from the evidence presented.

¶ 20        Trowbridge testified about a traffic stop on December 1, 2022, where she was found to be in possession of a firearm. She explained defendant, who she was dating at the time, was driving the stopped vehicle, a truck, and she was seated between him and Bowser. As to how she came into possession of the firearm, Trowbridge testified the firearm was "all of a sudden" there after they were stopped. She explained, "[Defendant] tried to hand it to me[,] and I refused. He tried to hide it. And then I didn't want him to get out with it, so I grabbed it, because I didn't want

him to get hurt." Trowbridge placed the firearm in her waistband, where it was later discovered. Trowbridge acknowledged she (1) did not report to law enforcement that the firearm belonged to defendant, (2) was a convicted felon, and (3) was testifying pursuant to an agreement where, in exchange for her testifying truthfully, she would receive a two-year prison sentence for unlawful possession of a weapon by a felon and the other charges against her, including a charge for armed violence, would be dismissed.

¶ 21 Detective Bachman testified about his investigation into a "magazine" discovered within a patrol vehicle. He explained, on December 11, 2022, "a magazine loaded with 13 rounds" was discovered in a patrol vehicle between the driver and front passenger seats, "tucked behind the center console." Detective Bachman learned defendant was placed in the front passenger seat of the patrol vehicle during a traffic stop on December 1, 2022. Detective Bachman testified the magazine was compatible with the firearm discovered in the possession of Trowbridge. Detective Bachman did not know if Trowbridge had been placed in the patrol vehicle.

¶ 22 According to the PSI, defendant, who was 42 years old at the time of the sentencing hearing, had previously been sentenced to 19 years in prison for committing the offenses of attempted murder and aggravated battery with a firearm in July 2002. Defendant had also committed various misdemeanor and traffic offenses between 1998 and 2002. Defendant reported having received a college degree in 2012 and being employed in construction at the time he committed the offenses in this case. He also reported having been diagnosed with " 'bipolar, PTSD, [and] borderline personality disorder' " and having "long term depression." He acknowledged struggling with substance abuse and reported having completed outpatient substance-abuse treatment. Defendant reported first using methamphetamine at the age of 41, with his last use on " '12-10-2022.' "

¶ 23　　　　Defendant, in his written statement, acknowledged making poor choices and attributed those choices to the difficulties of reentering society upon his release from prison, his struggle with addiction, and his association with people who would "help feed" his addiction. Defendant asserted he was "ashamed" of his "actions" and requested "mercy" at sentencing.

¶ 24　　　　The letters in support of defendant addressed, amongst other things, defendant's upbringing and character, as well as his actions following his release from prison. The letters noted defendant made plans to start a construction business upon his release and then executed those plans by obtaining the necessary licenses, equipment, and customers.

¶ 25　　　　As for recommendations, the State recommended defendant be sentenced to consecutively imposed prison terms of 50 years for armed violence and 5 years for possession of methamphetamine. The defense, in turn, recommended defendant be sentenced at the lower end of the statutory range for both offenses. In support of its recommendation, the defense argued, in part, "[t]here was no violence," "[t]here was no threat of violence," "[n]o one was harmed," and "[t]here was no threat of harm."

¶ 26　　　　In the oral pronouncement of its decision, the trial court stated it had considered the evidence presented at trial and at sentencing, including "the evidence and information offered by the parties in aggravation and mitigation." The court further stated it had considered "the factors in aggravation and mitigation." The court noted:

> "The Court has and is to consider the nature and circumstances of the offense, and the history, character, and condition of the defendant. In reading the defendant's statement in allocution, I will say that the Court feels some level of sympathy for the defendant, in the sense of his issues and his desire to do better in life. For whatever

reason, however, the defendant on multiple occasions in his life has

chosen to involve himself with firearms."

The court emphasized defendant served a lengthy term of imprisonment for attempting to kill another human with a firearm and then, on two separate occasions following his release from prison, was in possession of a firearm. The court noted it found Trowbridge's testimony to be "very believable." The court acknowledged "defendant's criminal conduct did not cause serious physical harm to another" but found "[b]eing armed with a loaded gun does threaten serious physical harm to another" and posed "a great risk of harm to society." The court found "[t]he most significant factor in aggravation" was defendant's criminal history. It also noted, "Sentencing is necessary to deter others." The court sentenced defendant to consecutively imposed prison terms of 45 years for armed violence and 5 years for possession of methamphetamine.

¶ 27        Shortly after the sentencing hearing, defendant filed a motion to reconsider, arguing the "sentence entered is excessive." The trial court, following a hearing, denied defendant's motion.

¶ 28        This appeal followed.

¶ 29                              II. ANALYSIS

¶ 30        On appeal, defendant argues his convictions for armed violence and possession of methamphetamine should be reversed because the State failed to prove him guilty beyond a reasonable doubt or, alternatively, (1) his conviction for possession of methamphetamine should be vacated under the one-act, one-crime doctrine and (2) his sentence for armed violence should be vacated as excessive. The State disagrees with each of defendant's arguments.

¶ 31                        A. Sufficiency of the Evidence

¶ 32    First, defendant argues his convictions for armed violence and possession of methamphetamine should be reversed because the State failed to prove him guilty beyond a reasonable doubt. Specifically, defendant asserts the State failed to prove he constructively possessed the handgun and methamphetamine.

¶ 33    When presented with a challenge to the sufficiency of the evidence to sustain a conviction, the question before this court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis and internal quotation marks omitted.) *People v. McLaurin*, 2020 IL 124563, ¶ 22, 162 N.E.3d 252. We must "not substitute [our] judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Gray*, 2017 IL 120958, ¶ 35, 91 N.E.3d 876. "A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 34    At the outset, we must clarify the essential elements the State had to prove to establish defendant's guilt of armed violence and possession of methamphetamine as charged in this case. To establish defendant's guilt of possession of methamphetamine, the State had to prove defendant knowingly possessed less than five grams of a substance containing methamphetamine. 720 ILCS 646/60(a), (b)(1) (West 2022). Defendant asserts the State failed to prove he constructively possessed the methamphetamine.

¶ 35    To prove constructive possession of a controlled substance, the State must show the defendant had the "intent and the capability to maintain control and dominion" over the controlled substance. *People v. Frieberg*, 147 Ill. 2d 326, 361, 589 N.E.2d 508, 524 (1992). "Constructive possession may be proved by showing that the defendant had knowledge of the

presence of the contraband and had immediate and exclusive control over the area where the contraband was found." *People v. Love*, 404 Ill. App. 3d 784, 788, 937 N.E.2d 752, 756 (2010). "The requirement of exclusive control does not mean that possession may not be joint." (Internal quotation marks omitted.) *People v. Warren*, 2016 IL App (4th) 120721-B, ¶ 65, 55 N.E.3d 117. "The evidence proving constructive possession is often entirely circumstantial." *People v. Vences*, 2023 IL App (4th) 220035, ¶ 40, 237 N.E.3d 1041; see *Love*, 404 Ill. App. 3d at 788 (setting forth various factors from which a defendant's knowledge of contraband may be inferred).

¶ 36      As for the armed violence charge, the State had to prove defendant committed the offense of possession of methamphetamine while armed with a dangerous weapon, a handgun. 720 ILCS 5/33A-2(a) (West 2022). Defendant asserts the State did not prove he constructively possessed the methamphetamine and, therefore, did not prove he committed the predicate offense of possession of methamphetamine. Additionally, defendant asserts the State failed to prove he constructively possessed the handgun.

¶ 37      Defendant's assertion that the State failed to prove he constructively possessed the handgun is based upon a misunderstanding of the law, a misunderstanding which the State fails to address. Contrary to defendant's assertion, the State was not required to prove he constructively possessed the handgun to establish his guilt of armed violence; rather, the State had to prove something more—that defendant committed the offense of possession of methamphetamine while "armed with a dangerous weapon," in this case a handgun. *Id.*; see *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 33, 130 N.E.3d 432 (stating the armed violence statute "requires more than mere constructive possession"). A person is "armed with a dangerous weapon" when he "carries on or about his or her person or is otherwise armed with" a handgun. 720 ILCS 5/33A-1(c)(1)-(2) (West 2022). A person is "otherwise armed" if he has "immediate access to or timely control over" a

handgun. *People v. Harre*, 155 Ill. 2d 392, 396, 614 N.E.2d 1235, 1237 (1993) (citing *People v. Condon*, 148 Ill. 2d 96, 110, 592 N.E.2d 951, 958 (1992)).

¶ 38    Now, with the essential elements the State had to prove to establish defendant's guilt of armed violence and possession of methamphetamine clarified, we consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. See *McLaurin*, 2020 IL 124563, ¶ 22. Specifically, we consider whether, as called into question by defendant, a rational trier of fact could have found defendant constructively possessed the methamphetamine and had immediate access to or timely control over the handgun.

¶ 39    The evidence showed defendant and Bowser were subjected to a traffic stop while in a single-cab pickup truck which belonged to, and was being driven by, defendant. Prior to the stop, Deputy Mattern observed defendant and Bowser "quickly looking back" at his position "numerous times" while they sat inside the truck at a gas station for an extended period. When Deputy Mattern activated his emergency lights to initiate the stop, defendant did not stop the truck but rather continued forward for approximately 50 seconds and one mile. Deputy Mattern searched the truck during the stop and discovered the methamphetamine and the handgun inside a Styrofoam cup filled with soda. The cup was in a two-cup cupholder attached to the dashboard above the center console. While the cup was slightly closer to Bowser, it was still within defendant's immediate reach. From this evidence, the trial court reasonably inferred, as indicated in the oral pronouncement of its decision, the methamphetamine and the handgun were dumped into the cup sometime after Deputy Mattern activated his emergency lights and defendant was, at a minimum, aware of the contraband. The court also reasonably found defendant constructively possessed the methamphetamine and had immediate access to and timely control over the handgun. We therefore

reject defendant's challenge and conclude the State presented sufficient evidence to sustain his convictions for possession of methamphetamine and armed violence.

¶ 40 We note defendant has cited several cases in support of his argument, including *People v. Thomas*, 2019 IL App (1st) 162791, 143 N.E.3d 1199, *People v. Day*, 51 Ill. App. 3d 916, 366 N.E.2d 895 (1977), *People v. McIntyre*, 2011 IL App (2d) 100889, 962 N.E.2d 1108, and *People v. Millis*, 116 Ill. App. 2d 283, 252 N.E.2d 395 (1969). We have reviewed each of these cases and found them to be factually distinguishable. For instance, in *Thomas*, 2019 IL App (1st) 162791, ¶ 28, unlike in this case, the contraband was found under the passenger seat of the defendant's vehicle. In *Day*, 51 Ill. App. 3d at 917-18, unlike in this case, the contraband was found beneath the legs of another passenger. In *McIntyre*, 2011 IL App (2d) 100889, ¶ 18, unlike in this case, the contraband was found on the side of the seat closest to the front passenger door. And in *Millis*, 116 Ill. App. 2d at 287, unlike in this case, "[t]he only specific evidence in the record is that the [contraband was] not in the possession of the defendant."

¶ 41 B. One-Act, One-Crime Doctrine

¶ 42 Next, defendant argues his conviction for possession of methamphetamine should be vacated under the one-act, one-crime doctrine. Defendant relies on the First District's decision in *People v. Curry*, 2018 IL App (1st) 152616, ¶¶ 23-33, 100 N.E.3d 482, which vacated the defendant's conviction for possession of a controlled substance with intent to deliver under the one-act, one-crime doctrine, where it served as the predicate offense for the defendant's armed violence conviction.

¶ 43 Setting aside any forfeiture, this court, prior to the briefing in this case, issued a decision in *People v. Vences*, 2023 IL App (4th) 220035, ¶¶ 43-56, 237 N.E.3d 1041, rejecting the defendant's argument that his conviction for possession of methamphetamine should be vacated

under the one-act, one-crime doctrine, where it served as the predicate offense for his armed violence conviction. We found a plain reading of the pertinent statutory provision "clearly establishes the General Assembly specifically authorized cumulative punishment for armed violence and *the* predicate offense." (Emphasis in original.). *Id.* ¶ 53. In reaching our decision, we considered and declined to follow the First District's decision in *Curry*. *Id.* ¶¶ 54-56.

¶ 44        Defendant, after acknowledging our holding in *Vences* in his reply brief, simply argues "the *Curry* court's interpretation of the armed violence statute was correct." Without more from defendant, we stand by our prior decision and the reasoning therein and conclude defendant's convictions do not violate the one-act, one-crime doctrine.

¶ 45                          C. Armed Violence Sentence

¶ 46        And last, defendant argues his sentence for armed violence should be vacated as excessive. Specifically, defendant asserts his sentence is excessive because it (1) greatly varies from the spirit and purpose of the armed violence statute and is manifestly disproportionate to the offense committed and (2) is the result of the trial court ignoring a mitigating factor, the lack of harm caused, and placing undue emphasis on an aggravating factor, his criminal history.

¶ 47        When presented with a challenge to a statutorily authorized sentence as excessive, the question before this court is whether there has been an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212, 940 N.E.2d 1062, 1066 (2010); see *People v. Patterson*, 217 Ill. 2d 407, 448, 841 N.E.2d 889, 912 (2005) ("[A] trial court has broad discretion in sentencing."). We must not substitute our judgment for that of the trial court on questions involving the weight of the evidence or the credibility of the witnesses. *Alexander*, 239 Ill. 2d at 213. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' "

*People v. Pina*, 2019 IL App (4th) 170614, ¶ 20, 143 N.E.3d 794 (quoting *People v. Fern*, 189 Ill. 2d 48, 54, 723 N.E.2d 207, 210 (1999)).

¶ 48            Setting aside any forfeiture, we begin with defendant's assertion that his sentence is the result of the trial court ignoring a mitigating factor, the lack of harm caused, and placing an undue emphasis on an aggravating factor, his criminal history. See *People v. McGuire*, 2017 IL App (4th) 150695, ¶ 38, 92 N.E.3d 494 ("When imposing a sentence, the trial court must consider statutory factors in mitigation and aggravation, but the court need not recite and assign a value to each factor it has considered."). We disagree with defendant. As for the mitigating factor, the court, contrary to defendant's assertion, did not ignore the lack of harm caused. The court stated it had considered "the evidence and information offered by the parties in *** mitigation" and "the factors in *** mitigation." In fact, the court acknowledged "defendant's criminal conduct did not cause serious physical harm to another." As for the aggravating factor, we are far from convinced the court placed "undue emphasis" on defendant's criminal history. The court emphasized defendant chose to involve himself with a firearm despite having previously attempted to kill another human with a firearm and serving a lengthy sentence for that conduct. The court's emphasis on defendant's criminal history was warranted. The record simply does not support defendant's assertion his sentence is the result of the court ignoring a mitigating factor or placing an undue emphasis on an aggravating factor.

¶ 49            We turn next to defendant's assertion that his sentence greatly varies from the spirit and purpose of the armed violence statute and is manifestly disproportionate to the offense committed. We disagree with defendant. As our supreme court has explained, the armed violence statute was the product of our legislature recognizing "that a felon with immediate access to a dangerous weapon was predisposed to use such weapon when confronted with resistance, either

from victims, law enforcement representatives, or other criminals." *Harre*, 155 Ill. 2d at 395. Here, the fact defendant was not actually possessing the methamphetamine and loaded firearm while speaking with law enforcement does negate the potential violence which could have occurred. Again, the *loaded* firearm was within the immediate reach of defendant during the traffic stop. We find, contrary to defendant's assertions, the nature of the offense committed is not "non-serious," nor is the rationale underlying the armed violence statute "stretched to its limit *** [because] there was no victim." See *People v. Anderson*, 364 Ill. App. 3d 528, 542, 848 N.E.2d 98, 110 (2006) (finding a defendant could be convicted of armed violence for possessing an unloaded firearm, "as an unloaded firearm can provoke violent reaction from one who is not certain it is unloaded").

¶ 50    We conclude, giving the requisite deference to the trial court, the statutorily authorized sentence rendered against defendant for committing the offense of armed violence is not excessive. See *People v. Webster*, 2023 IL 128428, ¶ 29, 234 N.E.3d 804 ("We continue to find that the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight." (Internal quotation marks omitted.)). In reaching this decision, we note defendant has improperly cited an unpublished order from 2020 for precedential value. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023). That order was not considered by this court.

¶ 51                              III. CONCLUSION

¶ 52    For the reasons stated, we affirm the trial court's judgment.

¶ 53    Affirmed.