2026 IL App (1st) 241581-U

No. 1-24-1581

Order filed April 6, 2026

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 5721 |
| | ) | |
| MAXIMO COLON, | ) | Honorable |
| | ) | Arthur Willis, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's 28-year sentence for predatory criminal sexual assault of a child is affirmed where the record shows that the trial court considered defendant's age, health, and potential for rehabilitation at sentencing.

¶ 2     Following a bench trial, defendant Maximo Colon was convicted of predatory criminal sexual assault of a child and sentenced to 28 years' imprisonment. On appeal, defendant, who was 74 years old at the time of sentencing, contends that his sentence is excessive in light of his age, significant health problems, the objectives of sentencing, and the fact that his current sentence

amounts to a *de facto* life sentence. Because the trial court considered defendant's age, health, and potential for rehabilitation at sentencing, we affirm.

¶ 3    Defendant was charged, by indictment, with one count of predatory criminal sexual assault of a child. 720 ILCS 5/12-14.1(a)(1) (West 2004).[1] CI 5-10. That count alleged that defendant, being seventeen years of age or over, knowingly committed an act of sexual penetration between his penis and the sex organ of J.R., who was under thirteen years of age, for the period from June 8, 2004, through June 7, 2009. CI 5-10.

¶ 4    Because defendant solely challenges the sentence imposed by the trial court, we recount the facts only to the extent necessary to resolve the issue on appeal.

¶ 5    J.R., who was 27 years old at the time of trial, testified that when she was five or six years old she began living with defendant's wife, Irene Colon, along with Irene's brother, two of Irene's sons, one of the son's wives, and the couple's three children. R 96-97. Defendant did not live in the household with Irene. R 97. Defendant worked as an automobile mechanic and owned his own shop, located on the 2000 block of North Racine Avenue in Chicago. R 97-98.

¶ 6    J.R. testified that, when she was about 8 or 9 years old, she began visiting defendant's mechanic shop every Saturday. R 99. J.R. was told that the reason she visited defendant's shop was to "rub his legs." R 99. When J.R. visited defendant's shop, he would order her to go into the shop's upstairs office. R. 99-100. There, J.R. would set up an air mattress, get undressed, and defendant would "get on top of [her] and try to put his penis in [her] vagina." R. 101. Defendant's penis first penetrated her vagina when she was 9 or 10 years old. R. 103. When J.R. asked why he

---

[1] Section 12-14.1(a)(1) was subsequently recodified as section 11-1.40(a)(1) (see Pub. Act 96-1551 art. 2, § 5 (eff. July 1, 2011) (recodifying 720 ILCS 5/12-1.40(a)(1))) and became effective July 1, 2011.

was doing this to her, defendant told her that, when she was five years old and sitting on his lap reading a book, he started touching her and she "liked it."

¶ 7    J.R. stated that defendant did this to her every Saturday beginning when she was 8 or 9 until she was 12 years old. Defendant stopped assaulting J.R. when she was 12 years old; a social worker at J.R.'s school informed 12-year old J.R. that she may be pregnant. R 104. J.R., who was still living with Irene, went home and told Irene what had happened at school. R 104-05. Irene had J.R. take a pregnancy test and afterward took J.R. to a clinic to get an abortion. J.R. was unable to receive an abortion because the pregnancy was too far along. R. 105-06.

¶ 8    J.R. gave birth in July 2009, when she was 13 years old. R 108. Irene immediately put the child up for adoption. R. 109-10. J.R. then returned to Irene's house, where she continued to live until she was 16 years old, at which time she moved in with her mother. R. 110.

¶ 9    Chicago Police Detective Brian Rix, who was assigned to J.R.'s case, testified that he collected DNA samples from defendant, J.R., and J.R.'s child. R 152-173. Detective Rix then sent these DNA samples to the Illinois State Police Forensics Division for analysis.

¶ 10    Katherine Sullivan, a forensic scientist with the Illinois State Police, testified that she analyzed the DNA samples, and the results showed a 99.999 percent probability that defendant was the biological father of J.R.'s child. R 231. Other calculations showed that defendant was 1.627 billion times more likely to be the child's father compared to an unrelated man, and the child was 197.7 trillion times more likely to be the offspring of defendant and J.R. compared with two other parents.[2] R 230-33.

---

[2] These additional calculations are the "combined parentage index" and "reverse parentage analysis", respectively. R 230-33.

¶ 11    Defendant testified that in 2004 he was married to, but not living with, Irene. R 242. At that time, J.R. and her brother began visiting defendant's automobile repair shop on Saturdays. R. 245-46. When visiting, the two would help clean up the garage and its second-floor office/kitchen. R. 246. While J.R. was helping clean upstairs, she would also rub his legs while he sat on a couch. R. 247. Defendant stated that J.R. did this because she would tell him that she wanted to. R 247. There was also an air mattress in the upstairs office, used by defendant's brother who lived in the garage. R 249. Defendant stated that he never had J.R. take of her clothes, and he never had any sexual contact with her whatsoever. R. 250.

¶ 12    The court found defendant guilty, noting that the testimony and evidence proved beyond a reasonable doubt that he sexually assaulted J.R. R 268-70. The court ordered a presentence investigative report (PSI), and the case proceeded to sentencing. R 269-72.

¶ 13    Defendant's PSI showed he was born on April 17, 1950, in Chicago. CI 20. Defendant worked as a mechanic, and in 1980 opened his own towing and auto repair business. CI 23. Defendant had no criminal history and had no reported psychological problems. CI 23-24. Defendant stated that he had poor physical health and consulted multiple doctors for various health problems including heart disease and cancer. CI 23. With respect to J.R., defendant stated he "didn't know why" she was accusing him of rape and denied ever touching her, stating he loved her like a daughter. CI 22.

¶ 14    In aggravation, the State argued for the maximum sentence, noting the seriousness of the offense and that defendant's actions were not "a one-off thing," but rather this was "something that happened on an almost every week basis" for years. R 354-55. The State pointed out that "the only reason [defendant] stopped was because the family found out that [J.R.] was pregnant." R

355. The State also noted that it was "particularly aggravating that [defendant] is saying 'I never touched her' and 'I love her like a daughter' when DNA proved that he fathered her child." R 343.

¶ 15    The State presented the victim impact statements of J.R. and her wife, D.R., detailing J.R.'s pain and suffering as a result of defendant's actions. J.R. related to the court that, as a result of defendant's actions, she had difficulty maintaining stable relationships and struggled to open up to and trust people. R 345-46. Now married, she has frequent nightmares and cries, kicks, and screams throughout the night. R 346. R 346. J.R. discussed the trauma of giving birth and being forced to place the child for adoption immediately after birth, without ever having the opportunity to hold or see the baby. R 347-48. J.R. stated that she continues to suffer as a result of the assaults, and that she wants justice for what was done to her.

¶ 16    D.R. spoke about J.R.'s frequent nightmares and stated that J.R. woke up in the middle of the night screaming, scratching, and crying. R 349. D.R. further stated that, even though J.R. escaped a traumatic childhood, she could not escape the trauma defendant caused her, and that J.R. continued to suffer because of that trauma. R 350.

¶ 17    In mitigation, defense counsel informed the court that defendant was 74 years old and suffering from colon cancer and heart disease. R 343-44. Defendant graduated from high school in 1969 and thereafter began training and working as a mechanic. R 344. In 1980, he purchased his first tow truck, and eventually purchased a second truck and a garage, where he ran his auto repair business. R 344. Counsel pointed out that defendant had six children, one of whom passed away shortly before the start of trial, 15 grandchildren, and a lot of support from his family. R 344-45.

¶ 18    Defense counsel presented letters written in support of defendant and read the letters into the record.  First, defendant's daughter stated that he "has always been a rock for his family" and was always there to support anyone in need. R 351. Defendant's son stated that defendant always looked out for his children when they needed help, was always there for his children, and was a loving and caring father. R 352. Third, defendant's daughter-in-law stated that, in the 29 years she has known defendant, he has been caring, supportive, and loving to his family, and was always a kind, understanding, and patient man. R 352-53. Lastly, defendant's son related that defendant has been a devoted, loving and supportive father who was always there for his children. R 353.

¶ 19    In announcing sentence, the court stated it considered the evidence at trial, the testimony of the witnesses, the PSI, the victim impact statements, the statements by defendant's family members, the statutory factors in aggravation and mitigation, defendant's criminal history, and his health. R 356-57. As to defendant's health, the court acknowledged that any sentence it imposed would be a *de facto* life sentence. R 357. The court explained that due to defendant's advanced age and health issues, it considered the minimum term of six years' imprisonment, but that "those issues were not enough for [the court] to believe that six years was in any way, shape, or form appropriate." The court also explained in detail why 10, 15, 20, and 25 year-terms were not appropriate given the "egregious nature" of defendant's actions. R 357-60. The court recounted that defendant molested J.R. nearly every week over a course of four years, impregnating her at age 12 then immediately taking her child away from her. The court sentenced defendant to 28 years' imprisonment, finding this was "the only appropriate sentence" for the crimes he committed. R 360.

¶ 20    Defendant filed a motion to reconsider sentence, which the court denied. The court stated that it had considered reducing defendant's sentence to 26 years' imprisonment, but decided it was not an appropriate sentence.

¶ 21    On appeal, defendant contends that his sentence is excessive in light of his age, significant health problems, the objectives of sentencing, and the fact that his current sentence is a *de facto* life sentence.

¶ 22    The Illinois Constitution requires that, in imposing sentence, the court must balance "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. To achieve that balance, a trial court must consider a number of factors in aggravation and mitigation. *Jones-Beard*, 2019 IL App (1st) 162005, ¶ 20 (citing *People v. Alexander*, 239 Ill. 2d 205, 213 (2010)). In doing so, the trial court has broad discretion and its decisions are entitled "great deference" because it is in a superior position to this court to consider factors such as "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Alexander*, 239 Ill. 2d at 212-13 (Internal quotation marks omitted). Although the trial court's consideration of mitigating factors is required, it has no obligation to recite each factor and the weight it is given. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. Absent some indication to the contrary, other than the sentence itself, we presume the trial court properly considered all relevant mitigating factors presented. *People v. Kindle*, 2021 IL App (1st) 190484, ¶ 67.

¶ 23    In reviewing a defendant's sentence, this court will not reweigh the aggravating and mitigating factors and substitute our judgment for that of the trial court merely because we would have weighed these factors differently. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. A

sentencing determination will not be disturbed absent an abuse of discretion. *Knox*, 2014 IL App (1st) 120349, ¶ 46. Where a sentence is within the statutory guidelines prescribed for the offense, we presume it to be proper. *Id.* ¶¶ 46-47. We will only find such a sentence to be an abuse of discretion if there is an affirmative showing that the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Watson*, 2021 IL App (1st) 180034, ¶ 61 (quoting *People v. Stacey*, 193 Ill. 2d 203, 210 (2000)).

¶ 24 In this case, we find that the trial court did not abuse its discretion in imposing a 28-year sentence for predatory criminal sexual assault of a child.

¶ 25 As charged here, the sentencing range for predatory criminal sexual assault of a child, a Class-X offense, is 6 to 60 years' imprisonment. 720 ILCS 5/12-14.1(a)(1), (b)(1) (West 2008). Because the 28-year sentence imposed in this case is within the statutory sentencing range, it is presumed proper. See *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 105.

¶ 26 Defendant does not dispute that his sentence falls within the permissible sentencing range and is presumed proper. Rather, he argues his 28-year sentence is excessive in light of his age and significant health problems. Defendant contends the court failed to give adequate weight to the mitigating evidence. Specifically, defendant points out that he was 74 years old at the time of sentencing, and suffering from colon cancer, heart disease, and severe back and shoulder pain. He maintains that, given these factors, a term closer to the statutory minimum of six years' imprisonment would constitute a serious penalty while also respecting the constitutional objective of restoring him to useful citizenship. He requests this court reduce his sentence closer to the statutory minimum or, in the alternative, vacate his sentence and remand for resentencing.

¶ 27    Nothing in the record on appeal demonstrates that the court failed to adequately consider the mitigating evidence. In fact, the record demonstrates that the trial court was well-aware of the mitigating factors identified by defendant on appeal and expressly gave them weight during sentencing. R 356-60. In mitigation, defense counsel informed the court that defendant was 74 years old and suffering from colon cancer and heart disease. The trial court also received and considered defendant's PSI, which contained evidence of the mitigating factors now at issue. R 356.

¶ 28    In announcing sentence, the court acknowledged that "any sentence" imposed "will be effectively a *de facto* life sentence." The court specifically stated that it considered defendant's age, ailing health, and his potential for rehabilitation. The court further considered additional mitigating evidence including testimony, statements from defendant's family, PSI, statutory factors, and defendant's background. R. 356-57. However, the record also shows that although the court considered defendant's age, health and rehabilitative potential, it ultimately gave greater weight to the seriousness of the offense. R. 357-60.

¶ 29    Pursuant to its constitutional duty to balance the retributive and rehabilitative purposes of punishment, the court was also required to consider factors in aggravation. *People v. Hearring*, 2022 IL App (1st) 192064, ¶ 44. Because the most important sentencing factor is the seriousness of the offense, the trial court is not required to give greater weight to mitigating factors than the seriousness of the offense. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. The presence of mitigating factors does not require a minimum sentence. *Id.* Again, the court is not required to recite and assign value to each factor it considered, when imposing sentencing. *People v. Williams*, 2019 IL App (1st) 173131, ¶ 21. "A defendant's rehabilitative potential", moreover, "is not

entitled to greater weight than the seriousness of the offense." *People v. Coleman*, 166 Ill. 2d 247, 261 (1995).

¶ 30    Here, the court expressly noted that the statutory minimum sentence of six years was not "in any way, shape, or form appropriate," given the "seriousness and egregious nature of" defendant's crime. The court then explained in detail why 10, 15, 20 or 25-year terms were likewise inappropriate given that defendant molested J.R. for years, he impregnated her at age 12, she gave birth at 13, and she was forced to put the child up for adoption. After weighing all the evidence, the court found a 28-year prison sentence warranted.

¶ 31    Defendant essentially asks us to reweigh the sentencing factors and substitute our judgment for that of the trial court. This we cannot do. See *Jones*, 2019 IL App (1st) 170478, ¶ 50 (a reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently). Given that defendant's sentence is within the statutory range and the court considered the mitigating evidence, we cannot find that the court abused its discretion in imposing a 28-year sentence for the predatory criminal sexual assault of J.R. Where defendant targeted J.R. as a young child, sexually abused her for years, and only stopped when he had impregnated her at age 12, we do not find the 28-year sentence greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.

¶ 32    In reaching this conclusion, we are not persuaded by defendant's reliance on *People v. Rickard*, 99 Ill. App. 3d 914, 918-19 (1981), and *People v. Norfleet*, 259 Ill. App. 3d 381, 395 (1994) (abrogated on other grounds by *People v. Fern*, 189 Ill. 2d 48 (1999)), to support his argument that the trial court did not accord his rehabilitative potential proper weight at sentencing. D's Br. at 13. It is well-settled that this court may not engage in cross-case comparative sentencing

as a basis for determining the appropriateness of a sentence. See *People v. Fern*, 189 Ill. 2d 48, 55 (1999) (rejecting cross-case comparative sentencing because "such an analysis does not comport with our sentencing scheme's goal of individualized sentencing and would unduly interfere with the sentencing discretion vested in our trial courts."). Thus, we may not determine the appropriateness of defendant's sentence by comparing it to those in other cases.

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 34    Affirmed.